IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
SOUTHERN DIVISION

No. 7:14-CV-36-FL

| | | |
|---|---|---|
| RETIREMENT COMMITTEE OF DAK AMERICAS LLC, as Plan Administrator of the DAK Americas LLC Pension Plan; and TRANSAMERICA RETIREMENT SOLUTIONS CORPORATION, | ) ) ) ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | ORDER |
| RODNEY B. SMITH, DAVID W. ALLEN, MICHAEL LYNN BASS, JOSEPH ALEXANDER BELLAMY, MARK STEPHEN BREWER, JEROME BRYANT, HAROLD E. CORBETT, KELVIN L. GALLOWAY, WARREN ALBERT GARRISON, JAMES F. HOLLAND, WILLIAM LACEY NELSON, SIDNEY HUGH RHODES, JIMMIE RAY SELLERS, MENDELL W. SMITH, and OTELLA IRENE WEBB, | ) ) ) ) ) ) ) ) ) ) ) ) ) | |
| Defendants. | ) | |

This matter comes before the court on plaintiffs' motion to amend judgment pursuant to

Federal Rule of Civil Procedure 59(e) (DE 197), motion for attorneys' fees (DE 191), and motion

for costs (DE 194). In response to the motion to amend judgment, defendants include a request for

certain post-judgment relief, which the court construes as a motion (DE 211). Also before the court

is defendants' motion for partial disallowance of costs (DE 212). The issues raised have been

briefed and are ripe for ruling. For the following reasons, the court grants in part and denies in part

plaintiffs' motion to amend judgment as set forth herein, denies plaintiffs' motion for attorneys' fees,

denies defendants' motion for post-judgment relief, and allows costs in part as set forth herein.

## BACKGROUND

On September 29, 2015, the court entered judgment in favor of plaintiffs on their equitable restitution claim under § 502(a)(3) of the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. § 1132(a)(3), through which plaintiffs sought return of overpayments of pension benefits made to certain defendants. In addition, the court entered judgment against all defendants on counterclaims they asserted against plaintiffs for benefits, damages, and other equitable relief.

Plaintiffs filed the instant motion to amend judgment on October 27, 2015, requesting that the court amend the judgment to specify prejudgment interest running from the date of filing of the complaint, and postjudgment interest running from the date of the court's September 29, 2015, judgment. In addition, plaintiffs seek to have the amended judgment direct certain defendants to return the overpayments within seven days of the date of amended judgment. Defendants filed a response thereto on December 4, 2015, opposing an award of prejudgment interest. In addition, while defendants do not oppose setting a date certain for return of overpayments, they request that the court allow all defendants to make new benefit elections, including an election for an early retirement annuity. Following several extensions of time to permit the parties to explore settlement options, plaintiffs' filed their reply in support of the motion to amend judgment on February 8, 2016.

In the meantime, defendants filed a notice of appeal on October 29, 2015, and the court of appeals has remarked that it will not docket the appeal until the court has resolved the pending motion to amend judgment. In addition, plaintiffs filed the instant motion for attorneys' fees, which opposed motion also ripened on February 8, 2016. Defendants partially opposed plaintiffs' motion for costs through the instant motion for partial disallowance of costs.

2

**DISCUSSION**

A.     Motion to Amend Judgment

Federal Rule of Civil Procedure 59(e) provides that a motion to alter or amend a judgment must be filed no later than 28 days after the entry of the judgment. "While the Rule itself provides no standard for when a district court may grant such a motion, courts interpreting Rule 59(e) have recognized three grounds for amending an earlier judgment: (1) to accommodate an intervening change in controlling law; (2) to account for new evidence not available at trial; or (3) to correct a clear error of law or prevent manifest injustice." Hutchinson v. Staton, 994 F.2d 1076, 1081 (4th Cir. 1993). "Thus, Rule 59(e), in essence, gives the district court a chance to correct its own mistake if it believes one has been made." Zinkand v. Brown, 478 F.3d 634, 637 (4th Cir. 2007). "Rule 59(e) motions may not be used, however, to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co. v. Am. Nat. Fire Ins. Co., 148 F.3d 396, 403 (4th Cir. 1998).

The amendments sought by plaintiffs are of a type suitable for consideration under the foregoing standard. Although plaintiffs requested prejudgment and postjudgment interest in their complaint, the court did not address such relief in its final order and judgment. Likewise, while plaintiffs requested an order requiring defendants to return overpayments to the DAK Americas LLC Pension Plan (the "Plan"), the court's final order and judgment did not include such direction. The court's omission of such provisions in its final order and judgment was an inadvertent oversight. The court sets forth below its analysis of the requested amendments in turn, followed by separate discussion of defendants' request to be allowed an opportunity for a new benefit election.

3

1.      Prejudgment Interest

"ERISA does not specifically provide for pre-judgment interest, and absent a statutory mandate the award of pre-judgment interest is discretionary with the trial court."  Quesinberry v. Life Ins. Co. of N. Am., 987 F.2d 1017, 1030 (4th Cir. 1993) (en banc).  In an ERISA case, the court may exercise its discretion to award prejudgment interest "in order to compensate [the plaintiff] for the loss of the use of his funds."  Id. at 1030-31; see City of Milwaukee v. Cement Div., Nat. Gypsum Co., 515 U.S. 189, 196 (1995) (stating that prejudgment interest compensates the plaintiff "for the loss of use of money due as damages").

"The rate of pre-judgment interest for cases involving federal questions is a matter left to the discretion of the district court."  Quesinberry, 987 F.2d at 1031.  Courts have, for example, recognized potential applicability of both state and federal statutory rates for judgments as a guideline. See, e.g., id. (noting that district court borrowed the state statutory judgment rate of 12% in awarding prejudgment interest); Fed. Deposit Ins. Corp. v. British Am. Corp., 755 F. Supp. 1314, 1328 (E.D.N.C. 1991) (applying federal post-judgment interest rate to prejudgment interest award for claims involving contract governed by federal law); see also United States v. Dollar Rent A Car Sys., Inc., 712 F.2d 938, 941 (4th Cir. 1983) (instructing district court to "set a rate of prejudgment interest in accordance with federal law" in claim involving contract governed by federal law); E.E.O.C. v. Liggett & Myers Inc., 690 F.2d 1072, 1074 (4th Cir. 1982) ("In determining the rate of prejudgment interest, the district court is not bound by state law.").

An award of prejudgment interest is necessary in this case to compensate plaintiffs for the loss of the use of funds overpaid and not returned, calculated from the date of the filing of the complaint to the date of the court's judgment on September 29, 2015.  Such prejudgment interest

4

shall be due from those defendants who had not returned overpayments as of the date of the court's September 29, 2015, judgment, in proportion to the amount of each respective overpayment.

Defendants argue that an award of prejudgment interest is not warranted because plaintiffs did not explain to defendants the basis for their corrected lump sum calculations, particularly "prior to the Plaintiffs' initiation of this litigation." (DE 211). This argument is unavailing for several reasons. As an initial matter, plaintiffs have requested, and the court has limited, prejudgment interest only for the period after initiation of the lawsuit, rendering defendants' argument based on the preceding time period largely moot. In addition, the court finds lack of pre-litigation explanation not pertinent to the prejudgment interest determination, where the purpose of prejudgment interest is to make plaintiffs whole for the loss of use of their funds. See Quesinberry, 987 F.2d at 1030-31. In any event, plaintiffs did give defendants a pre-litigation explanation for the calculation of their corrected lump sum calculations. (See Sept. 29, 2015, Order at 11). Accordingly, the court finds defendants' argument in opposition to prejudgment interest to be without merit.

With respect to calculating the amount of prejudgment interest, reference to the federal post-judgment interest rate provides an appropriate guideline.[1] Such interest is calculated "at a rate equal to the weekly average 1-year constant maturity Treasury yield, as published by the Board of Governors of the Federal Reserve System, for the calendar week preceding [] the date of the judgment." 28 U.S.C. § 1961(a). Such interest "shall be computed daily . . . [and] compounded annually." Id. § 1961(b).

---

[1] The court rejects plaintiffs' suggestion to base prejudgment interest on defendants' earnings received on the overpayments. Such approach shifts the focus from compensating plaintiffs for loss of use of the funds to examination of each defendant's actual conduct, which is not the goal of prejudgment interest. See Quesinberry, 987 F.2d at 1030-31. In addition, where plaintiffs provided no prejudgment briefing on the question of prejudgment interest, and where evidence regarding defendants' investment choices is not in the record, such an approach risks unduly delaying proceedings over potential evidentiary disputes that easily can be avoided by using the post-judgment statutory rate.

5

The applicable rate during the calendar week preceding the date of judgment in this case was 0.34%.  See Bd. of Gov. of the Fed. Reserve Sys., Selected Interest Rates (Weekly, Release Date: September 28, 2015), available at http://www.federalreserve.gov/releases/h15/20150928/ (last visited May 9, 2016).  Accordingly, the court will award prejudgment interest at the rate of 0.34%, computed daily and compounded annually, from the date of the complaint to the date of the judgment, September 29, 2015.  The court calculates prejudgment interest for each individual defendant who had not returned payment as of date of judgment, as set forth below, with detailed calculations set forth in the appendix to this order.

| Defendant | Overpayment | Prejudgment Interest Amount | Amended Judgment Amount |
|---|---|---|---|
| Mark Stephen Brewer | $170,615.23 | $931.48 | $171,546.71 |
| Harold E. Corbett | $99,278.75 | $543.08 | $99,821.83 |
| Albert Garrison | $215,922.14 | $1,180.56 | $217,102.70 |
| James F. Holland | $157,172.70 | $859.26 | $158,031.96 |
| William Lacey Nelson | $58,947.79 | $321.97 | $59,269.76 |
| Sidney Hughes Rhodes | $193,224.29 | $1056.97 | $194,281.26 |
| Jimmie Ray Sellers | $142,448.22 | $778.25 | $143,226.47 |
| Rodney B. Smith | $191,313.20 | $1046.05 | $192,359.25 |
| **Total** | **$1,228,922.32** | **$6,720.11** | **$1,235,642.43** |

2.      Postjudgment Interest

Postjudgment interest at the statutory rate of 0.34% shall be calculated on the amended judgment amount (comprising the sum of overpayments plus prejudgment interest up to September 29, 2015) awarded against those defendants who had not returned overpayments as of the date of the September 29, 2015, judgment.  See 28 U.S.C. § 1961(a); Quesinberry, 987 F.2d at 1031.  For

6

purposes of the instant order, such postjudgment interest is calculated from the date of original September 29, 2015, judgment,[2] to the date of this order (May 9, 2016). Such postjudgment interest amounts are set forth below, with detailed calculation set forth in the appendix to this order. Postjudgment interest will continue to accumulate for each defendant until the date of satisfaction of the judgment by each defendant.

| Defendant | Amended Judgment Amount | Current Postjudgment Interest Amount |
|---|---|---|
| Mark Stephen Brewer | $171,546.71 | $354.57 |
| Harold E. Corbett | $99,821.83 | $207.39 |
| Albert Garrison | $217,105.19 | $450.46 |
| James F. Holland | $158,031.96 | $327.81 |
| William Lacey Nelson | $59,269.76 | $122.65 |
| Sidney Hughes Rhodes | $194,281.26 | $401.40 |
| Jimmie Ray Sellers | $143,226.47 | $296.59 |
| Rodney B. Smith | $192,359.25 | $399.17 |
| **Total** | **$1,235,642.43** | **$2,560.04** |

3.     Order to Return Overpayments

Plaintiffs request that the court amend the judgment to include specific language requiring defendants to return the overpayments, and to do so by a date certain, specifically, within seven days of entry of the amended judgment. Plaintiffs also request that such return be made via check made payable to "Transamerica Retirement Solutions, LLC," at an address set forth in the motion. (DE 198 at 5).

---

[2]  See Scotts Co. v. Cent. Garden & Pet Co., 403 F.3d 781, 792 (6th Cir. 2005) (stating that postjudgment interest may run "from the date of any judgment that is not entirely set aside").

7

As an initial matter, the court finds that the portion of the motion seeking more specific language requiring defendants to return the overpayments is consistent both with the court's original judgment and the relief sought in plaintiff's complaint. As noted previously, plaintiffs requested in their complaint that the court "[i]ssue an Order requiring Defendants to return the aforementioned funds to the Plan." (Compl. at 8). The term "Plan" in the complaint refers to the "DAK Americas LLC Pension Plan," administered by plaintiff Retirement Committee of DAK Americas LLC, as Plan administrator. (Compl. at 1).

In the court's final order, the court determined that "the alleged overpayments belong in good conscience to the Plan and must be returned to the Plan." (Sept. 29, 2015, Order at 26). In conclusion, however, the court only specified in pertinent part as follows:

> plaintiffs' first motion for summary judgment (DE 153) is GRANTED IN PART and DENIED IN PART AS MOOT. In particular, <u>plaintiffs are entitled to summary judgment on their equitable restitution claim against the Ward defendants and defendant Rodney Smith</u> . . . .

(<u>Id.</u> at 42) (emphasis added). The court's judgment reflected this conclusion, specifying only that "in accordance with the court's order entered September 29, 2015, and for the reasons set forth more specifically therein, . . . plaintiffs' first motion for summary judgment is granted in part and denied in part as moot." (DE 189).

To reflect the court's determination that the alleged overpayments must be returned to the Plan, as well as the instant determination of prejudgment interest, the court will amend the judgment to specify that the following defendants must pay to the Plan the amounts specified below, which include prejudgment interest, as previously calculated. The Plan is entitled to postjudgment interest on such amounts, per 28 U.S.C. § 1961(a), from the date of the original judgment, September 29, 2015, to the date of satisfaction of the judgment.

8

| Defendant | Amended Judgment Amount |
|---|---|
| Mark Stephen Brewer | $171,546.71 |
| Harold E. Corbett | $99,821.83 |
| Albert Garrison | $217,102.70 |
| James F. Holland | $158,031.96 |
| William Lacey Nelson | $59,269.76 |
| Sidney Hughes Rhodes | $194,281.26 |
| Jimmie Ray Sellers | $143,226.47 |
| Rodney B. Smith | $192,359.25 |
| **Total** | **$1,235,642.43** |

With respect to plaintiffs' request for a date certain to return overpayments, the court declines to amend the judgment to so specify. The Federal Rules of Civil Procedure provide rules for proceedings to enforce a judgment, including execution. Under such rules, for example, "no execution may issue on a judgment, nor may proceedings be taken to enforce it, until 14 days have passed after its entry." Fed. R. Civ. P. 62(a). Thus, the Federal Rules of Civil Procedure already include, in effect, a 14 day time period for compliance with a court's judgment. Adding a seven-day period for "return of overpayments" to the Plan would unnecessarily interject a further time deadline for satisfaction of the judgment, which is effective immediately upon entry.

Finally, the court turns to plaintiffs' request to amend the judgment to specify that checks must be made payable to "Transamerica Retirement Solutions, LLC," at a specified address. On the present record, such specification is not appropriate for inclusion in the court's judgment, although it may be considered in aid to enforcement of the court's judgment. As noted above, the court determined that "the alleged overpayments belong in good conscience to the Plan and must be returned to the Plan." (Sept. 29, 2015, Order at 26). The court also determined that "[t]he Plan

9

contracts with plaintiff Transamerica Retirement Solutions Corporation ('Transamerica') to provide certain fiduciary and administrative services in connection with the operation of the Plan, including calculating and executing pension benefit distributions." (Id. at 5). The court made no findings, however, regarding an entity specified as "Transamerica Retirement Solutions, LLC," nor have plaintiffs provided information to enable amendment of the judgment to specify Transamerica Retirement Solutions, LLC, as payee.[3]

Accordingly, the court will amend the judgment to state that defendants must pay the Plan the amounts herein specified. In this respect, the court grants in part plaintiffs' final request to amend the judgment to specifically order return of overpayments made.

4. Request for Benefit Election

In their brief in opposition to the motion to amend judgment, defendants argue that the court should allow them to make new benefit elections, including an election for an early retirement annuity, if the court sets a date certain for return of overpayments. Defendants argue that such a remedy is required because the initial election forms sent to defendants incorrectly stated lump sum values, and the revised election forms sent to defendants in December 2013 incorrectly stated the relative values of the lump sum option compared to the annuity option.

Defendants' argument is unavailing for multiple reasons. As an initial matter, the court construes defendants' argument as a motion for separate post-judgment relief imbedded within their brief in response to plaintiffs' motion to amend judgment. Construed as such, the motion is procedurally improper because it does not comply with the Federal Rules of Civil Procedure and the

---

[3] Evidence in the record reflects that lump sum distributions were made from the "Plan" to defendants, (see, e.g., AR 198 (DE 155-2); DE 126 ¶30; DE 80 ¶30; DE 57 ¶9), and that, prior to commencement of litigation, Transamerica requested return of the overpayments to the Plan by making payments to "Transamerica Retirement Solutions Corporation." (See, e.g., AR 220-21 (DE 155-2); DE 126 ¶39; DE 80 ¶39; DE 57 ¶13; DE 131-2).

court's Local Rules. "A request for a court order must be made by motion." Fed. R. Civ. P. 7(b). Under Local Rule 7.1, "all motions made, other than in a hearing or trial, shall be filed with an accompanying supporting memorandum in the manner prescribed by Local Civil Rule 7.2(a)."

Defendants' motion also does not seek relief appropriate for an award post-judgment. As noted above, "Rule 59(e) motions may not be used . . . to raise arguments which could have been raised prior to the issuance of the judgment, nor may they be used to argue a case under a novel legal theory that the party had the ability to address in the first instance." Pac. Ins. Co., 148 F.3d at 403. Here, defendants' motion raises both new arguments and a novel legal theory that they had ability to address in the first instance before judgment. In their answers and counterclaims, defendants did not request as relief an opportunity to make new benefit elections, including an opportunity to elect a single life annuity with new election benefit forms. Similarly, in their summary judgment briefs, defendants did not request such relief. Accordingly, a post-judgment motion is not an appropriate vehicle for such relief.

Moreover, defendants do not specify a procedural rule under which they seek such relief. "The Federal Rules of Civil Procedure cannot be so loosely invoked." Calvary Christian Ctr. v. City of Fredericksburg, Va., 710 F.3d 536, 540 (4th Cir. 2013). In Calvary Christian Center, the Fourth Circuit rejected a similar attempt to invoke post-judgment relief without recourse to the rules required for such relief:

> Each Rule serves a procedural purpose that fits into the larger function of providing an orderly process to adjudicate actions. When, in an action, the plaintiff wishes to amend its complaint, Rule 15 governs the process. But when the action has been dismissed, there is no pending complaint to amend. To proceed with a different complaint than that filed originally, a plaintiff can either open the judgment under Rule 60 and then file a motion to amend or commence a new action. [Plaintiff] did neither. Rather, it filed a motion to amend a complaint that had already been

dismissed by a final judgment without making any request to open the judgment and without giving any reason why the judgment should have been vacated.

Id. Here, defendants have moved to obtain relief not previously sought in their answers or counterclaims, and they have filed neither a Rule 60 motion nor a motion to amend their pleadings.

In any event, defendants have not shown good cause to reopen the judgment to allow filing of a motion to amend their pleadings. Such a motion for leave to amend the pleadings following a judgment must be "evaluated under the same legal standard as a similar motion filed before judgment was entered—for prejudice, bad faith, or futility." Katyle v. Penn Nat'l Gaming, Inc., 637 F.3d 462, 471 (4th Cir.2011). In addition, defendants must establish good cause for a late motion to amend, as a threshhold matter. See Fed. R. Civ. P. 16(b)(4) (stating that a "schedule may be modified only for good cause and with the judge's consent); Laber v. Harvey, 438 F.3d 404, 427 n. 23 (4th Cir. 2006) (en banc).

"Whether an amendment is prejudicial will often be determined by the nature of the amendment and its timing." Laber, 438 F.3d at 427. "A common example of a prejudicial amendment is one that raises a new legal theory that would require the gathering and analysis of facts not already considered by the [opposing party, and] is offered shortly before or during trial." Id. "An amendment is not prejudicial, by contrast, if it merely adds an additional theory of recovery to the facts already pled and is offered before any discovery has occurred." Id. Defendants' motion in the instant case does not address any of these considerations, particularly the fact that defendants now are raising a new legal theory. "[T]he further the case progressed before judgment was entered, the more likely it is that the amendment will prejudice the [opposing party] or that a court will find bad faith on the [movant's] part." Id.

Here, defendants raise a theory of relief that easily could have been raised during summary judgment briefing, if not at the pleading stage of the case. Discussion of this theory of relief could have enabled defendants to address it in the context of other relief sought. Raising this theory earlier, moreover, could have enabled the court to addressed the issues raised by the theory in a proper procedural posture, rather than through a brief in opposition to a post-judgment motion after an appeal has been noticed. Accordingly, defendants have not shown good cause to allow reopening of the judgment to enable them to amend their counterclaims to assert a new type of relief.

In any event, defendants' request for relief is based, at least in part, on a flawed premise. Defendants argue, for example, that the revised election forms they received in December 2013 incorrectly stated that the recalculated lump sums had relative values that were 100% of the single life annuities. As a result, defendants argue, the revised election forms were invalid, and did not provide sufficient notice to permit a valid election process with notice based on accurate representations, as required by ERISA. Defendants claim their spouses could not have given informed consent by signing election forms that misstated relative values.

Defendants fail to note, however, that plaintiffs sent each defendant a letter on December 16, 2013, providing further explanation regarding the revised lump sum calculations (hereinafter the "December 16, 2013 explanation letter(s)"). The December 16, 2013 explanation letters provided information regarding the discrepancy between the initial lump sum calculation and the revised lump sum calculation. (See, e.g., AR 233 (DE 155-2); DE 139-7). The December 16, 2013, explanation letters also provided "updated relative value information," and stated "[b]ecause your Lump Sum was revised, we are also providing you with updated relative value information (prior values are shown in Section E of your Retirement Benefit Application)." (Id.). The December 16, 2013, letters

then included a chart showing that the relative value of the revised Lump Sum payment is substantially lower than the Single Life Annuity. (Id.). For example, for defendant Bryant, the relative value specified was 63%, and for defendant Rodney Smith, the relative value specified was 66%. (Id.)

These December 16, 2013, explanation letters were dated well within the 60 day period for making revised elections, which period began with the December 5, 2013, correction letter. Thus, the instant premise to defendants' argument, that they were not given proper notice to allow a valid election of benefits, is flawed. In light of the procedural hurdles already set forth above, the court does not undertake here an exhaustive analysis of the merits of defendants' underlying theory of relief or other principles of equity that conceivably might allow such relief in the form of a new election of benefits. Rather, the court notes the flawed premise in defendants' argument to underscore the impropriety of granting the relief requested at this juncture.

In sum, in light of the foregoing considerations, the court denies defendants' motion for post-judgment relief.

B.     Motion for Attorney Fees

ERISA provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). "Thus, ERISA places the determination of whether attorneys' fees should be awarded in an ERISA action completely within the discretion of the district court." Quesinberry, 987 F.2d at 1028. The Fourth Circuit has "adopted a five factor test to guide the district court's exercise of discretion in awarding attorneys' fees under ERISA." Id. at 1029. The five factors are:

(1)     degree of opposing parties' culpability or bad faith;

(2)      ability of opposing parties to satisfy an award of attorneys' fees;

(3)      whether an award of attorneys' fees against the opposing parties would deter other persons acting under similar circumstances;

(4)      whether the parties requesting attorneys' fees sought to benefit all participants and beneficiaries of an ERISA plan or to resolve a significant legal question regarding ERISA itself; and

(5)      the relative merits of the parties' positions.

Id. (quoting Reinking v. Philadelphia American Life Insurance Co., 910 F.2d 1210, 1217-18 (4th Cir.1990)).

"This five factor approach is not a rigid test, but rather provides general guidelines for the district court in determining whether to grant a request for attorneys' fees." Id. "In exercising its discretion under the statute, the court . . . must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts." Id. (quoting Reinking, 910 F.2d at 1218).

In consideration of the five Quesinberry factors, the unique circumstances of this case, and the remedial purposes of ERISA, the court finds that an award of attorney fees to plaintiffs is not justified. With respect to the first factor, defendants have not acted in bad faith, and defendants' degree of culpability is balanced against the degree of culpability in plaintiffs' own conduct. In particular, this litigation arises out of initial mistakes on the part of plaintiffs, which included breaches of fiduciary duty in its initial misrepresentations and distribution of incorrect lump sum amounts. (See Sept. 29, 2015, Order at 38). Plaintiffs also made mistakes in correcting their initial misrepresentations, in the form of an erroneous statement of relative value of the corrected lump sum amount, later revised in their December 16, 2013, explanation letters. (See id. at 38 n. 24.). Relative to this conduct, defendants' pre-litigation and litigation positions, including refusal by certain

15

defendants to return the alleged overpayments made, did not involve a high degree of culpability. Accordingly, the first factor weighs against an award of attorneys fees.

With respect to the second Quesinberry factor, plaintiffs have not made a compelling showing that defendants are able easily to satisfy an award of attorneys' fees. Plaintiffs suggest defendants can pay attorneys' fees because they received "significant severance packages" upon separation from DAK Americas LLC. (DE 192 at 10). Plaintiffs offer no details regarding the terms of the severance packages, however, nor is there any indication that the packages served any purpose other than lessening the financial burden that comes with a loss of employment. Plaintiffs have presented no evidence otherwise regarding the financial ability to pay on the part of defendants. Accordingly, the court finds that this factor weighs against an award of attorneys' fees.

Regarding the third Quesinberry factor, the court finds that an award of attorneys' fees against defendants would deter other persons acting under similar circumstances. Defendants reasonably sought judicial determination of their claims and arguments regarding plaintiffs' interpretation of the Plan and defendants' theories of equitable relief. An award of attorneys' fees to plaintiffs would deter similar plan beneficiaries from fully litigating reasonable but novel positions of interpretation and equitable relief. Relevant to this factor is the Fourth Circuit's directive that the court "must also bear in mind the remedial purposes of ERISA to protect employee rights and to secure effective access to federal courts." Quesinberry, 987 F.2d at 1029. Accordingly, based on this factor and related considerations, an award of attorneys' fees is not warranted.

Next, the court considers the fourth Quesinberry factor, whether plaintiffs sought to benefit all participants of an ERISA plan. Here, plaintiffs did seek to benefit all Plan participants by

16

seeking relief in accordance with the Plan's terms. Such relief benefits the continued administration of the Plan and ensures fair and equitable distribution of Plan benefits. In light of the remaining factors and circumstances of the case, however, satisfaction of this factor is not enough to tip the balance in favor of attorneys' fees.

Finally, the court considers the fifth <u>Quesinberry</u> factor, the relative merits of the parties' positions. Application of this factor is more nuanced than plaintiffs suggest in their motion. While plaintiffs contend this factor weighs in their favor because they prevailed on the merits, the inquiry under this factor is not so limited to which party prevailed. Rather, the court must consider the "relative merits of the parties positions," and application of the factor is not to be a "rigid test." <u>Quesinberry</u>, 987 F.2d at 1029.

With these considerations in mind, although the court determined in its September 29, 2015, order that the Plan required return of overpayments, interpretation of the Plan was intricate and technical. Likewise, while the court determined that defendants had not established grounds for equitable relief, the issues raised were novel and open to reasonable arguments on both sides. The case presented complex issues for resolution by the court, and the case was not one where one side's arguments were clearly correct and the other side's arguments clearly were without merit. In addition, the relative merits of the parties' positions were drawn closer due to plaintiffs' own breach of fiduciary duty and misrepresentations made initially in the course of correcting that breach. Accordingly, although plaintiffs ultimately prevailed in the case, the relative merits of the parties' positions were close, and this factor weighs against an award of attorneys' fees.

In sum, in consideration of the Quesinberry factors, the remedial purposes of ERISA, and the unique circumstances of this case, the court concludes that an award of attorneys' fees is not justified. Accordingly, plaintiffs' motion for attorneys' fees is denied.

C.     Motions Regarding Costs

Plaintiffs seek $7,196.90 in their bill of costs, comprising the following: (1) fees of the Clerk: $400.00, (2) fees for service of summons: $1,725.00, (3) fees for printed or electronically recorded transcripts necessarily obtained for use in the case: $4,172.44, and (4) fees for copies necessarily obtained for use in the case: $899.46. Defendants move for disallowance of fees for service of summons, fees for copies, and part of the fees for transcripts. Plaintiffs in reply have reduced their request for transcript fees to $3,055.00 and copies to $798.00. Plaintiffs also clarified that they seek service of summons fees only from those defendants who did not waive service.

The court may tax as costs the following:

(1)     Fees of the clerk and marshal;
(2)     Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
(3)     Fees and disbursements for printing and witnesses;
(4)     Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
(5)     Docket fees under section 1923 of this title;
(6)     Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920. Federal courts cannot "exceed the limitations explicitly set out in § 1920 . . . without plain evidence of congressional intent." Crawford Fitting Co. v. J. T. Gibbons, Inc., 482 U.S. 437, 445 (1987). The court's local rules provide further limitations on the award of costs. See Local Civil Rule 54.1. The court addresses each category of requested costs in turn.

18

1.      Clerk fees

Plaintiffs request $400.00, in filing fee costs, which request is not opposed.  The request is allowed, and the clerk fees shall be divided equally between all defendants, or approximately $26.67 per defendant.[4]

2.      Fees for service of summons

Plaintiffs seek reimbursement of $1,725.00 for private process server fees for service of summons on defendants Sidney Hugh Rhodes, Joseph Alexander Bellamy, Mark Stephen Brewer, and Michael Lynn Bass.

Section 1920 does not provide for taxation of private process server fees.  Nevertheless, this court previously has determined that "[i]n making the fees of the Marshal taxable as costs in  28 U.S.C. § 1920, Congress exhibited an intent to make service of process a taxable item."  Arista Records LLC v. Gaines, 635 F. Supp. 2d 414, 418 (E.D.N.C. 2009).  "The federal rules now allow for the service of process in civil matters by methods other than the U.S. Marshal Service."  Id. at 418-19.  "Given the apparent congressional intent to make service of process fees a taxable item and due to the substitution of private process servers for the U.S. marshal in recent years, taxation of costs for special process servers is justifiable."  Id. (quotations omitted).  In this respect, the Bill of Costs form of the United States Courts presently provides a line item for "Fees for service of summons and subpoena," rather than just "Fees of  the . . . marshal."  (DE 194).

Plaintiffs seek private process server fees, based on a reasonable rate of $150.00 per hour, yielding a $900.00 fee for six hours spent providing process to three defendants, Sidney Hugh

---

[4] In the final calculation of costs as set forth in the table below and in the judgment, the court rounds down to the nearest cent for five defendants and up to the nearest cent for ten defendants to account for fractions of cents in division of the total $400.00 amount.

Rhodes, Joseph Alexander Bellamy, and Mark Stephen Brewer. (DE 194-2). Plaintiffs seek process server fees of $825.00, based on the same hourly rate, for five and one half hours spent serving process to Michael Lynn Bass after second attempt. (Id.). Defendants argue the fee is excessive in relation to a past case in which the court awarded $135.00 in fees for service of two deposition subpoenas. See Boykin Anchor Co. v. AT & T Corp., No. 5:10-CV-591-FL, 2014 WL 4798726, at *1 (E.D.N.C. Sept. 26, 2014). Boykin Anchor, however, is distinguishable because it involved service of two deposition subpoenas, whereas this case involves initial service of process on four defendants. On the circumstances presented, the total fee is not excessive. The court allows such costs to be taxed, with three defendants taxed equally for the $900.00 service fee, and the remaining defendant taxed for the $825.00 fee associated with his service of process.

2. Transcripts

Plaintiffs seek a revised total of $3,055.00 to recover deposition transcript costs and video recording costs. Defendants object to video deposition costs on the ground that plaintiffs have not shown why both transcripts and video recordings were necessary for two of three depositions taken. This court, however, previously has determined that both transcript costs and video recording costs may be taxed "when a party notices a deposition to be recorded . . . by both stenographic and nonstenographic means, and no objection is raised at that time by the other party to the method of recording." Silicon Knights, Inc. v. Epic Games, Inc., 917 F. Supp. 2d 503, 511 (E.D.N.C. 2012) (quotations omitted). Here, where both methods were noticed and not objected to when used, the court awards $3,055.00 in deposition costs (including reduction made to reflect amounts voluntarily

withdrawn by plaintiffs), to be divided equally between all defendants, or approximately $203.67, per defendant.[5]

### 3. Copies

Plaintiffs seek a revised total in $798.00 in copying costs. Defendants object on the basis that no information is provided on the number of pages, the amount charged, and the purpose of the copies. Plaintiffs in reply have provided such information. This court previously has recognized that "copying costs are allowable if used as court exhibits, or if furnished to the court or opposing counsel." Boykin Anchor Co. v. AT & T Corp., No. 5:10-CV-591-FL, 2014 WL 4798726, at *4 (E.D.N.C. Sept. 26, 2014). Plaintiffs request $416.28 for copies falling within these categories, (DE 224 at 4), and such costs will be allowed. By contrast, "[t]he cost of copies made solely for the convenience of counsel are generally not taxable." Id. Plaintiffs request $381.72 for copies falling within this category, comprising copies made in preparation for depositions, (DE 224 at 4), and such costs will be disallowed.

Accordingly, the court allows in part and disallows in part plaintiffs' request for copy costs. The court allows copy costs in the amount of $416.28, to be divided equally between all defendants, yielding approximately $27.96, per defendant.[6]

In sum, the court allows in part and denies in part plaintiffs' request for costs, and costs shall be taxed in the judgment according to the following table:

---

[5] In the final calculation of costs as set forth in the table below and in the judgment, the court rounds down to the nearest cent for five defendants and up to the nearest cent for ten defendants to account for fractions of cents in division of the total $3,055.00 amount.

[6] In the final calculation of costs in the table and in the judgment, the court rounds down to the nearest cent for 3 defendants and up to the nearest cent for 12 defendants to account for fractions of cents in dividing the $416.28 total.

| Defendant | Clerk Fees | Service Fees | Transcripts | Copies | Total |
|-----------|-----------|--------------|-------------|--------|-------|
| Allen | $26.67 | | $203.66 | $27.75 | **$258.08** |
| Bass | $26.67 | $825.00 | $203.67 | $27.75 | **$1083.09** |
| Bellamy | $26.67 | $300.00 | $203.66 | $27.75 | **$558.08** |
| Bryant | $26.66 | | $203.67 | $27.76 | **$258.09** |
| Galloway | $26.67 | | $203.67 | $27.75 | **$258.09** |
| M. Smith | $26.66 | | $203.67 | $27.75 | **$258.08** |
| Webb | $26.67 | | $203.67 | $27.75 | **$258.09** |
| Brewer | $26.67 | $300.00 | $203.66 | $27.75 | **$558.08** |
| Corbett | $26.66 | | $203.67 | $27.76 | **$258.09** |
| Garrison | $26.67 | | $203.66 | $27.75 | **$258.08** |
| Holland | $26.66 | | $203.67 | $27.75 | **$258.08** |
| Nelson | $26.67 | | $203.67 | $27.75 | **$258.09** |
| Rhodes | $26.66 | $300.00 | $203.67 | $27.75 | **$558.08** |
| Sellers | $26.67 | | $203.67 | $27.75 | **$258.09** |
| R. Smith | $26.67 | | $203.66 | $27.76 | **$258.09** |
| **Total** | **$400.00** | **$1,725.00** | **$3,055.00** | **$416.28** | **$5,596.28** |

## CONCLUSION

Based on the foregoing, the court orders as follows:

(1)     Plaintiffs' motion to amend judgment (DE 197) is GRANTED IN PART and DENIED IN PART, as set forth herein.

(2)     Defendants' request for certain post-judgment relief, construed as a motion (DE 211), is DENIED.

(3)     Plaintiffs' motion for attorneys' fees (DE 191) is DENIED.

22

(4)      Plaintiffs' motion for costs and defendants' motion for disallowance of costs are GRANTED IN PART and DENIED IN PART as set forth herein.

(5)      The clerk is DIRECTED to enter an amended judgment providing in substance as follows:

IT IS ORDERED, ADJUDGED AND DECREED in accordance with the court's orders entered September 29, 2015 and May 9, 2016, and for the reasons set forth more specifically therein, that plaintiffs' first motion for summary judgment is granted in part and denied in part as moot; plaintiffs' second motion for summary judgment is granted; and, defendants' motions for summary judgment are denied. Accordingly, the following defendants must pay to **the DAK Americas LLC Pension Plan** the amended judgment amounts specified below, which include prejudgment interest. Postjudgment interest is due on such amounts, per 28 U.S.C. § 1961(a), from the date of the original judgment, September 29, 2015, to the date of satisfaction of the judgment.

| Defendant | Amended Judgment Amount |
|---|---|
| Mark Stephen Brewer | $171,546.71 |
| Harold E. Corbett | $99,821.83 |
| Warren Albert Garrison | $217,102.70 |
| James F. Holland | $158,031.96 |
| William Lacey Nelson | $59,269.76 |
| Sidney Hughes Rhodes | $194,281.26 |
| Jimmie Ray Sellers | $143,226.47 |
| Rodney B. Smith | $192,359.25 |
| **Total** | **$1,235,642.43** |

Furthermore, where the court allows in part plaintiffs' request for costs, costs are TAXED according to the following table:

| Defendant | Costs Taxed |
|---|---|
| David W. Allen | **$258.08** |
| Michael Lynn Bass | **$1083.09** |
| Joseph Alexander Bellamy | **$558.08** |
| Jerome Bryant | **$258.09** |
| Kelvin L. Galloway | **$258.09** |
| Mendell W. Smith | **$258.08** |
| Otella Irene Webb | **$258.09** |
| Mark Stephen Brewer | **$558.08** |
| Harold E. Corbett | **$258.09** |
| Warren Albert Garrison | **$258.08** |
| James F. Holland | **$258.08** |
| William Lacey Nelson | **$258.09** |
| Sidney Hugh Rhodes | **$558.08** |
| Jimmie Ray Sellers | **$258.09** |
| Rodney B. Smith | **$258.09** |
| **Total** | **$5,596.28** |

SO ORDERED, this the 9th day of May, 2016.


LOUISE W. FLANAGAN
United States District Judge

24

# Appendix

# Calculation of Prejudgment Interest

*Note: all dollar amount calculations are rounded to the nearest cent*

1.    Mark Stephen Brewer

    a.    $170,615.23 (overpayment amount) x .0034 (interest rate) = $580.09 (first year interest amount, as of Feb. 20, 2015, one year after complaint filed).

    b.    $580.09 (first year interest amount) + $170,615.23 (overpayment amount) = $171,195.32 (compound total after first year).

    c.    $171,195.32 (compound total) x .0034 (interest rate) = $582.06 (second year annual interest amount).

    d.    $582.06 (second year annual interest amount) / 365 (days in year) = $1.59 (second year daily interest amount).

    e.    $1.59 (second year daily interest amount) x 221 (number of days from start of second year, Feb. 20, 2015, to date of judgment, Sept. 29, 2015) = $351.39 (total interest for partial second year).

    f.    $580.09 (first year interest amount) + $351.39 (partial second year interest amount) = **$931.48** (total prejudgment interest amount).

2.    Harold E. Corbett

    a.    $99,278.75 x .0034 = $337.55 (first year interest amount)

    b.    $99,616.30 (compound total after first year).

    c.    $338.70 (second year annual interest amount).

    d.    $.93 (second year daily interest amount).

    e.    $.93 x 221 = $205.53 (total interest amount for partial second year).

    f.    $337.55 + $205.53 = **$543.08** (total prejudgment interest amount).

3.     Warren Albert Garrison

   a.     $215,922.14 x .0034 = $734.14 (first year interest amount)

   b.     $216,656.28 (compound total after first year).

   c.     $736.63 (second year annual interest amount).

   d.     $2.02 (second year daily interest amount).

   e.     $2.02 x 221 = $446.42 (total interest amount for partial second year).

   f.     $734.14 + $446.42 = **$1,180.56** (total prejudgment interest amount).

4.     James F. Holland

   a.     $157,172.70 x .0034 = $534.39 (first year interest amount)

   b.     $157,707.09 (compound total after first year).

   c.     $536.20 (second year annual interest amount).

   d.     $1.47 (second year daily interest amount).

   e.     $1.47 x 221 = $324.87 (total interest amount for partial second year).

   f.     $534.39 + $324.87 = **$859.26** (total prejudgment interest amount).

5.     William Lacey Nelson

   a.     $58,947.79 x .0034 = $200.42 (first year interest amount)

   b.     $59,148.21 (compound total after first year).

   c.     $201.10 (second year annual interest amount).

   d.     $.55 (second year daily interest amount).

   e.     $.55 x 221 = $121.55 (total interest amount for partial second year).

   f.     $200.42 + $121.55 = **$321.97** (total prejudgment interest amount).

6. Sidney Hugh Rhodes

    a.     $193,224.29 x .0034 = $656.96 (first year interest amount)

    b.     $193,881.25 (compound total after first year).

    c.     $659.20 (second year annual interest amount).

    d.     $1.81 (second year daily interest amount).

    e.     $1.81 x 221 = $400.01 (total interest amount for partial second year).

    f.     $656.96 + $400.01 = **$1056.97** (total prejudgment interest amount).

7. Jimmie Ray Sellers

    a.     $142,448.22 x .0034 = $484.32 (first year interest amount)

    b.     $142,932.54 (compound total after first year).

    c.     $485.97 (second year annual interest amount).

    d.     $1.33 (second year daily interest amount).

    e.     $1.33 x 221 = $293.93 (total interest amount for partial second year).

    f.     $484.32 + $293.93 = **$778.25** (total prejudgment interest amount).

8. Rodney B. Smith

    a.     $191,313.20 x .0034 = $650.46 (first year interest amount)

    b.     $191,963.66 (compound total after first year).

    c.     $653.68 (second year annual interest amount).

    d.     $1.79 (second year daily interest amount).

    e.     $1.79 x 221 = $395.59 (total interest amount for partial second year).

    f.     $650.46 + $395.59 = **$1046.05** (total prejudgment interest amount).

# Calculation of Postjudgment Interest

*Note: all dollar amount calculations are rounded to the nearest cent*

1.  Mark Stephen Brewer

    a.  $171,546.71 (revised judgment amount) x .0034 (annual interest rate) = $583.26 (first year annual interest amount)

    b.  $ 583.26 / 366 (extra day due to leap year) = $1.59  (first year daily interest amount)

    c.  Sept. 29, 2015 (date of judgment) to May 9, 2016 (date of amended judgment) = 223 (number of accumulated days postjudgment)

    d.  $1.59 (first year daily interest amount) x 223 (accumulated days) = $354.57 (accumulated postjudgment interest amount on May 9, 2016).

2.  Harold E. Corbett

    a.  $99,821.83 x .0034 = $339.39 (first year annual interest amount)

    b.  $.93  (first year daily interest amount)

    c.  223 (number of accumulated days postjudgment)

    d.  $207.39 (accumulated postjudgment interest amount on May 9, 2016).

3.  Warren Albert Garrison

    a.  $217,102.17 x .0034 = $738.15 (first year annual interest amount)

    b.  $2.02  (first year daily interest amount)

    c.  223 (number of accumulated days postjudgment)

    d.  $450.46 (accumulated postjudgment interest amount on May 9, 2016).

4.  James F. Holland

    a.  $158,031.96 x .0034 = $537.31 (first year annual interest amount)

    b.  $1.47  (first year daily interest amount)

      c.      223 (number of accumulated days postjudgment)

      d.      $327.81 (accumulated postjudgment interest amount on May 9, 2016).

5.      William Lacey Nelson

      a.      $59,269.76 x .0034 = $201.52 (first year annual interest amount)

      b.      $.55  (first year daily interest amount)

      c.      223 (number of accumulated days postjudgment)

      d.      $122.65 (accumulated postjudgment interest amount on May 9, 2016).

6.      Sidney Hugh Rhodes

      a.      $194,281.26 x .0034 = $660.56 (first year annual interest amount)

      b.      $1.80  (first year daily interest amount)

      c.      223 (number of accumulated days postjudgment)

      d.      $401.40 (accumulated postjudgment interest amount on May 9, 2016).

7.      Jimmie Ray Sellers

      a.      $143,226.47 x .0034 = $486.97 (first year annual interest amount)

      b.      $1.33  (first year daily interest amount)

      c.      223 (number of accumulated days postjudgment)

      d.      $296,59 (accumulated postjudgment interest amount on May 9, 2016).

8.      Rodney B. Smith

      a.      $192,359.25 x .0034 = $654.02 (first year annual interest amount)

      b.      $1.79  (first year daily interest amount)

      c.      223 (number of accumulated days postjudgment)

      d.      $399.17 (accumulated postjudgment interest amount on May 9, 2016).